IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | MDL DOCKET No. 875 |
| LIABILITY LITIGATION (No.VI) | : | (MARDOC) |
| | : | |
| Willard Bartel and David Peebles, as | : | |
| co-administrators of the Estate of | : | |
| ROBERT M. YOUNG | : | CIVIL ACTION NO. 11-32162 |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF MIAMI | : | |

## MEMORANDUM ORDER

Plaintiffs have moved to enforce a settlement agreement they maintain they had with defendant the University of Miami, to which defendant responds that no settlement agreement was ever reached.  Docs. 55 & 56.  I held a teleconference with counsel on May 5, 2015, and will deny the motion.

The parties agree to the following facts which occurred in 2013:

1. On July 30, defendant wrote to plaintiffs proposing terms of settlement including a monetary term of $7,500.  The letter did not attach a proposed release.  Doc. 56-2.

2. On August 6, plaintiffs emailed defendant stating "If we can agree to the release language (attached) we will be able to settle this case for $7,500.00."  Doc. 56-3 at 2.  The attached release included language to the effect that "[i]ndemnification shall be limited to the amount of settlement as stated herein."  Id. at 5.

3. On August 8, defendant emailed plaintiffs stating "Please find attached hereto our red line changes to the proposed Release.  Please advise us if it is acceptable to you in order to conclude the matter."  Doc. 56-4 at 2.  The referenced "red line changes" did not alter the language regarding indemnification or make other material modifications.

4. On August 9, the parties exchanged three pertinent emails.   First, defendant wrote "The U[niversity] will not agree to the indemnity limit of $7,500.00.  Please let me know whether we can settle the case on these terms."   A few minutes later plaintiffs responded "We accepted the release you tendered yesterday and we forwarded to our client for signature."   A few minutes later defendant emailed back "You can just cross out the two lines on this and initial it or send out new releases."   Docs. 56-5 at 2, 56-6 at 2.

5. In September and October defendant inquired about the status of the settlement, and on November 4, plaintiffs wrote to the defendant enclosing the executed release and demanding the settlement payment.   Doc. 55-5 at 2.   Defendant responded on November 5 stating that no settlement agreement had been reached because "certain changes to the Release . . . were unacceptable to our client, including but not limited to a limitation on indemnification."   Doc. 56-12 at 2.

Plaintiffs maintain that an agreement was reached when defendant returned the release on August 8 without any material changes, thus accepting all material terms.  Defendant offers two arguments to defeat the existence of a settlement agreement.   First, defendant argues that its August 8 email, attaching "our red line changes to the proposed" release, was conditioned on client approval.   Plaintiffs correctly opposes this argument.  Nothing in the emails between counsel conditioned acceptance on client approval, and counsel were entitled to rely on each other having authority to negotiate and accept terms of settlement.

Defendant's second argument is more compelling.   Defendant points to the fact that plaintiffs did not communicate acceptance of its August 8 offer.   Defendant's cover email enclosing the "red line changes" to the release stated "Please advise us if it is acceptable."   Thus, the email clearly required a response for acceptance, even if the

2

enclosed edits were minimal.[1]  This means that defendant remained free to withdraw its August 8 offer, which it did in its August 9 email announcing that it did not agree to the indemnification limitation.

Defendant is correct that it is a universal tenet of contract law that acceptance of an offer must be communicated to create a contract.  See generally Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008) ("mutual assent between parties is necessary for the formation of a contract . . . [and a]cceptance is measured not by the parties' subjective intent, but rather by their outward expressions of assent") (citing Restatement (Second) of Contracts § 17 & cmt. c); MMK Group v. SheShells Co., 590 F. Supp.2d 944, 963 (N.D. Ohio 2008) (elements of contract under Ohio law include manifestation of mutual assent);  Sea-land Serv., Inc. v. Sellan, 64 F. Supp.2d 1255, 1260-63 (S.D. Fla. 1999) (applying maritime law to determine validity of settlement agreement not to work and identifying elements as "offer and acceptance of the compromise and a meeting of the minds as to the terms") (quoting Wilson v. Wilson, 46 F.3d 660, 666 (7th Cir. 1995)).  Here, that element is missing.

---

[1] It is somewhat difficult to decipher from the submissions exactly what changes were made in defendant's red line edit to the release.  The version of defendant's email attachment that is appended to defendant's submission (Doc. 56-4) identifying the state and county of the case, appears otherwise identical to the version that was attached to plaintiffs' original August 6 proposal (Doc. 56-3), and both versions appear to be non-final in that they contain language that is underlined and stricken.  The version of defendant's attachment that is appended to plaintiffs' motion displays a right-hand edit column, which shows certain formatting edits and an edit to the paragraph preceding the plaintiff administrators' signatures.  Doc. 55-1.  In any event, because defendant's cover email clearly states that changes were made and that plaintiffs should "advise" if they are acceptable, defendant's August 8 email cannot be read as an acceptance.

Plaintiffs point out that public policy favors settlements, and that all that must be shown to enforce the agreement is a meeting of the minds by a preponderance of the evidence. Doc. 55 at 3-4. However, the contract element that is missing here is manifestation of assent, in other words communication of acceptance. While plaintiffs assert that they "accepted the terms of the Release" attached to defendant's August 8 email, Doc. 55 at 4, they did not communicate that acceptance to defendant, and offer no authority for the proposition that their uncommunicated intention satisfies the acceptance element of the contract. Indeed, a case on which they rely is to the contrary. See Laserage Tech. Corp. v. Laserage Labs., Inc., 972 F.2d 799, 802 (7th Cir. 1992) ("contract depends on what the parties express to each other . . . not on what they keep to themselves") (quoting Skycom Corp. v. Telstar Corp., 813 F.2d 810, 814-15 (7th Cir. 1987)).

Therefore, this 6th day of May, 2015, for the foregoing reasons, it is hereby ORDERED that plaintiffs' motion to enforce settlement is DENIED.

BY THE COURT:

/s/ Elizabeth T. Hey

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE